IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SEP 2 8 2012

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

JENNIFER ANDERSEN,

        Plaintiff,

v.                                  Civil Action No. 3:11-cv-250-JAG

MICHAEL J. ASTRUE,
*Commissioner of Social Security,*

        Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the plaintiff Jennifer Andersen's Objections to the Magistrate Judge's Report and Recommendation ("R&R"). (Dk. No. 12.) In 2007, Andersen applied for Social Security Disability benefits under the Social Security Act ("Act"). The Social Security Administration ("SSA") denied her application, and she appealed, first, to an administrative law judge ("ALJ") and subsequently to the SSA Appeals Council. Both entities affirmed the denial of benefits.

Anderson then appealed to this Court. Both she and the Commissioner of the SSA have filed cross-motions for summary judgment. The Court referred the case to a Magistrate Judge to prepare a Report and Recommendation ("R&R"). The Magistrate Judge has recommended that the Court affirm the Commissioner's decision denying benefits.

Andersen has objected to the R&R on three grounds: (1) that the ALJ failed to follow the "treating physician rule," (2) that the ALJ did not properly evaluate Andersen's credibility, and (3) that new evidence that Andersen submitted to the Appeals Council requires remand to the ALJ. (Dk. No. 13.)

For the reasons stated below, the court OVERRULES Andersen's Objections and ADOPTS the Magistrate Judge's R&R. In brief, this Court finds that the treating physician's evidence is not entitled to deference because, among other reasons, Anderson's own testimony undercuts the doctor's opinion. Further, contrary to the plaintiff's argument, the ALJ properly evaluated the claimant's credibility. Finally, the new evidence submitted by Anderson at the Appeals Council is neither material nor new, so no remand is necessary.

## I. STANDARD OF REVIEW

This Court reviews *de novo* any part of the Magistrate Judge's R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). A reviewing court may accept, reject, or modify, in whole or part, the Magistrate Judge's recommended disposition. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

This Court, when reviewing a denial of benefits by the Commissioner pursuant to 42 U.S.C. § 405(g), must accept the Commissioner's findings of fact if they are supported by substantial evidence and the Commissioner reached the finding by applying the correct legal standard. *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006); *Craig v. Charter*, 76 F.3d 585, 589 (4th Cir. 1996) (clarifying that the question is not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence). The "substantial evidence" standard is more demanding than the "scintilla" standard, but less demanding than the "preponderance" standard. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2011). Substantial evidence consists of "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). In determining whether substantial evidence exists, the Court must consider the record as a whole. *Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

The Court may not weigh conflicting evidence, evaluate the credibility of evidence, or substitute its own judgment for that of the agency. *Mastro*, 270 F.3d at 176. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* at 179. If the Court does not find that the Commissioner's decision is supported by substantial evidence in the record, or if the ALJ made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## II. BACKGROUND[1]

As noted above, the SSA denied Andersen's initial claim. Both an ALJ and the Appeals Council confirmed the denial of benefits.

The SSA defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ undertakes a five-step inquiry in order to make a determination of eligibility for Social Security benefits. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005). In the first step of the analysis, the claimant must demonstrate that, at the time of her application, she was not engaged in a substantial gainful activity. 20 C.F.R. § 404.1520(b). At the second step, the claimant must demonstrate that she has a "severe impairment . . . or combination of impairments which significantly limit[] [her] physical or mental ability to do basic work activities." § 404.1520(c). At the third step, the ALJ determines whether a) the claimant's impairment matches or equals one of the impairments listed in the Act and b) the impairment lasts, or is expected to last, for at least twelve months. If so, the claimant suffers from a qualifying

---

[1] The Magistrate's R&R reviews the facts of this case in great detail. Thus, this opinion discusses only those facts relevant to the disposition of Andersen's objections.

3

impairment, is entitled to benefits, and the analysis ends. § 404.1520 (d); *see* 20 C.F.R. §404 subpart P app. 1 (listing impairments). In the event that the impairment does not meet one of those listed in the Act, then the ALJ must compare the claimant's residual functioning capacity ("RFC") with the "physical and mental demands of [the claimant's] past relevant work." § 404.1520(f). If an ALJ determines that the claimant can still perform her past relevant work, then the ALJ will deny benefits. If the ALJ determines that the claimant cannot perform her past relevant work, then the burden shifts to the Commissioner to show that the claimant is capable of performing other work that is available in significant numbers in the national economy. § 404.1520(g)(1).

In this case, the ALJ correctly followed the five step sequential analysis. The ALJ found that Andersen satisfied the requirements of the first step because she had not engaged in a substantial gainful activity since June 19, 2007. (R. at 14.)

At the second step of the analysis, the ALJ found that Andersen had (1) depression/bipolar disorder, (2) generalized anxiety disorder, and (3) fibromyalgia. (R. at 14.) He concluded that, in combination with one another, the impairments were severe.[2] (R. at 14.) Treatment records from Dr. Rosalia Lomeo (Andersen's rheumatologist) and physical therapy records provided documentation of Andersen's treatment for fibromyalgia. Outpatient treatment records from Bonnie Neely (a licensed counselor) and Dr. Sumana Suresh (a psychiatrist) provided evidence in the record of Andersen's depression, bipolar disorder, and anxiety. (R. at 14.)

At the third step, the ALJ did not find that Andersen's impairments matched or equaled one of the impairments listed in the Act. The ALJ, therefore, moved to step four to determine

---

[2] Conversely, the ALJ found that Andersen's shoulder pain, knee pain, and headaches were not severe. (R. at 14–15.)

4

Andersen's RFC. (R. at 15.) After carefully considering the entire record, the ALJ found that Andersen had a RFC to perform light, entry-level, unskilled work that required little decision-making. (R. at 16.) In making this determination, the ALJ relied on evidence contained in multiple medical opinions that were part of the record. The particular opinions that are relevant for this Court's review include Dr. Lomeo, Ms. Neely, and Dr. Suresh's opinions.

Dr. Lomeo, a rheumatologist, began treating Andersen on June 26, 2007. He provided evidence in the form of submitted letters, a Fibromyalgia Treatment Questionnaire, and Andersen's treatment notes. (R. at 17.) Ms. Neely, a licensed counselor, had treated Andersen from January 20, 2003 through June 20, 2009. (R. at 17.) Ms. Neely submitted a Mental Status Evaluation Form, Andersen's medical records, and a Psychiatric/Psychological Impairment Questionnaire. (R. at 502–12.) Dr. Suresh, a psychiatrist, began meeting with Andersen every few months for medication management starting in August 2007. (R. at 287). Dr. Suresh submitted Andersen's medical records. (R. at 286–332, 611–616, 633–636.) Non-treating state experts in medicine and psychiatry also submitted reports to the record that the ALJ considered when making the RFC determination. (R. at 18.)

In addition to the medical opinions in the record, the ALJ relied on Andersen's written submissions in the record and her oral testimony at the hearing. (R. at 22–52, 162–64, 165–173, 174–178, 179–187, 197–206, 218–222.) The ALJ compared Andersen's written and oral testimony with the medical opinions and other evidence in the record to evaluate her credibility.

At the fourth step, the ALJ found that Andersen was unable to perform any of her past relevant work, including work as an executive assistant, a guidance counselor, a daycare worker, and a cashier. (R. at 19.) But, considering that Andersen was only 34 years old, had at least a high school education, had work experience, and had an RFC to perform light work, the ALJ

5

found that the plaintiff could perform jobs existing in the national economy. (R. at 20.) Accordingly, he then found that Andersen did not have a disability as defined by the Act, and affirmed the denial of benefits. (R. at 20.)

Andersen requested review of the ALJ's decision by the Appeals Council. Andersen submitted six additional pieces of evidence to the record for the Appeals Council to take into consideration. Of the submissions to the Appeals Council, only the submission from Dr. Nicholas Emiliani is relevant for this Court's review. (R. at 642.) Dr. Emiliani is a psychiatrist and provided a Psychiatric/Psychological Impairment Questionnaire, but no treatment records or other medical evidence from Dr. Emiliani appear in the record.

## III. ANALYSIS

Andersen objects to the R&R from the Magistrate Judge on three grounds: (1) the ALJ failed to follow the treating physician rule, (2) the ALJ did not properly evaluate Andersen's credibility, and (3) this Court should remand the case based on new evidence from Dr. Emiliani that was submitted to the Appeals Council. These objections are addressed in turn below.

### A. The ALJ Correctly Applied the Treating Physician Rule

First, Andersen asserts that the Magistrate Judge erred by finding that the ALJ appropriately discounted Dr. Lomeo's opinion as Andersen's treating physician. A treating physician's opinion must be given controlling weight if: (1) it is well supported by medically-acceptable clinical and laboratory diagnostic techniques and (2) the opinion is not inconsistent with other substantial evidence in the record. *Craig v. Charter*, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. § 416.927(d)(2); *see* SSR 96-2p, 1996 WL 374188 (July 2, 1996). The finder of fact must resolve conflicts between the opinion of the treating physician and other evidence in the record. *Schisler v. Heckler*, 787 F.2d 76, 13 Soc. Sec. Rep. Serv. 186, Unempl. Ins. Rep (CCH)

P 16706 (2nd Cir. 1986); *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) ("Assessing the probative value of competing evidence is quintessentially the role of the fact finder.").

A treating physician's opinion, however, does not always receive greater weight than other evidence. The opinion of a treating physician warrants "significantly less weight" if it "is not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)(4) (explaining that the more consistent an opinion is with the record as a whole, the more weight it deserves); *Mastro* 270 F.3d at 178 (treating physician opinions may be assigned less weight when there is "persuasive contrary evidence").

The record contains substantial contrary evidence to support the ALJ's decision to discount Dr. Lomeo's opinion. Dr. Lomeo's opinion was not consistent with other substantial evidence in the record. For example, the plaintiff's admitted activities of daily living placed Andersen at a higher performance point than Dr. Lomeo's reports. (R. at 19.) Andersen testified that she could hold and carry her eighteen month-old child, who was at least twenty-two pounds, but Dr. Lomeo opined that Andersen could only occasionally lift and carry five pounds. (R&R at 24.) Furthermore, two state Social Security Disability experts (Drs. Amos and Vinh) found that the plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours, and sit for six hours in an eight-hour day with no postural limitations.[3] (R. at 474–76, 583–89.)

Additionally, the regulations do not require the ALJ to accept opinions from a treating physician when the physician opines on the ultimate issue: whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner). *Jarrells v. Barnhart*, No.

---

[3] There are also additional contradictions in the record from other physicians that suggest a higher performance level for Andersen than Dr. Lomeo's opinion suggests. *See* R. at 346, 527, 536, 540, 541, 545, 547, 556–57.

7:04-CV-411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *see also* 20 C.F.R. § 404.1527(d)(3)–(4),(e). Part of Dr. Lomeo's opinion consisted of the conclusory statement that Andersen was totally disabled and unable to engage in any meaningful employment. Neither the ALJ nor this Court are required to accept the treating physician's legal opinion.

Second, Andersen objects to the Magistrate Judge's decision because she asserts that the Magistrate Judge erred by failing to discuss this Court's decision in *Stahlman v. Astrue*, No. 3:10-CV-475, 2011 WL 2471546 (E.D. Va. May 17, 2011) *report and recommendation adopted*, 3:10-CV-475, 2011 WL 2470249 (E.D. Va. June 21, 2011) in which the Court did not find substantial evidence in the record supporting the ALJ's decision to discount the treating physician's opinion. *Id.* at *4–5. In important respects, *Stahlman* differs from this case. In *Stahlman*, the ALJ had discounted the treating physician's opinion because the ALJ had not found "longitudinal evidence regarding the functional limitations from her impairment." *Id.* at *4. In contrast, in the present case, the ALJ discounted the treating physician's opinion for an entirely different reason: the limitations attributed to Andersen by Dr. Lomeo were belied by, among other things, Andersen's own testimony. (R. at 19.)

Third, Andersen alleges that the ALJ failed to take into account factors spelled out in regulations that an ALJ should consider when giving a treating physician's opinion less weight. If the ALJ elects not to give the treating physician's opinion controlling weight, he must "give good reasons" for doing so. 20 C.F.R. § 404.1527(c)(2). When making this determination, the ALJ should assess the following non-exclusive factors: (1) the length of the treatment relationship and the frequency of examinations, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4)

consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area in which an opinion is rendered, and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). The ALJ considered these credibility factors and clearly found one to be extremely important: consistency between the opinion and the record as a whole. (R. at 17–19.)

Fourth, Andersen asserts that the ALJ should have given greater weight to the opinion of her counselor, Ms. Neely. In connection with this argument, she also says the Magistrate Judge erred because he failed to discuss the reasons the ALJ gave for discounting Ms. Neely's opinion.[4] (Dk. No. 13.) The ALJ gave Ms. Neely's opinion limited weight "(1) because her comments were not based on laboratory or diagnostic testing, but on subjective reports of symptoms and limitations provided by the claimant, and (2) because her conclusions as to the claimant's ability to function were not consistent with the claimant's admitted activities of daily living and functional capabilities." (R. at 19.) The record supports the discounting of Ms. Neely's evidence. For one thing, her testimony is internally inconsistent. In May 2008, Ms. Neely found that Andersen was capable of maintaining her household; a few months later she changed horses and noted that Andersen was not capable of maintaining her household. Further, Ms. Neely's opinion is contradicted by Andersen's own testimony in which she indicated that she had been caring for her child and performing other household chores. (R. 26, 28–29.)

In sum, the ALJ gave less weight to the opinions of Andersen's treating physician and counselor primarily because he found that they were inconsistent with treatment notes and the

---

[4] A licensed professional counselor does not qualify as an "acceptable medical source" per the regulations, so Ms. Neely is not able to have her opinion granted the same weight as a treating physician's opinion. *See* 20 C.F.R. §416.913.

activities of daily living to which Andersen admitted. (R. 18-19.)  This Court finds substantial evidence in the record to support the ALJ's decision.

## B. *The ALJ Properly Evaluated Andersen's Credibility*

In her second objection, Andersen alleges that the Magistrate Judge erred by concluding that the ALJ properly discounted the credibility of Andersen. (Dk. No. 13.)  An ALJ makes a decision on a claimant's credibility in regard to the frequency and severity of symptoms and the extent of functional limitations after step three and before step four of the sequential analysis discussed above. Between steps three and four, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(e)(f); 20 C.F.R. § 416.945(a)(1).  The RFC must include impairments supported by the objective medical evidence in the record as well as impairments based on the claimant's credible, albeit subjective, complaints.  In evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ must determine whether the individual's claims are "supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce" the symptoms alleged. *Craig*, 76 F.3d at 591–92.

As the Magistrate Judge accurately stated, "this Court must give great deference to the ALJ's credibility determinations." (R&R at 27.)  When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent exceptional circumstances. *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). This Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5

F.3d 923, 928 (5th Cir. 1993)). Thus, when addressing the credibility determination of Andersen this Court must give great deference to the ALJ's determination.

The ALJ follows a two-step analysis to evaluate the claimant's description of her subjective symptoms. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996); 20 C.F.R. §404.1529(a); 20 C.F.R. § 416.929(a). In the first step, the ALJ will determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at *1–3. To make this determination, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at *4–5 n.3; *see also* SSR 96-8p, 1996 WL 374184, (July 2, 1996). If the ALJ determines in step one that the underlying impairment could reasonably be expected to produce the individual's pain, then the ALJ will proceed to the second part of the analysis. There, the ALJ will evaluate a claimant's statements about the intensity and persistence of the claimant's impairments and the extent to which the impairments affect the individual's ability to work. *Craig*, 76 F.3d at 595. When making this determination, the ALJ must take into account all of the available evidence, which includes a credibility finding of the claimant's statements regarding the extent of the symptoms. *Id.* Additionally, the ALJ must provide specific reasons for the weight he ultimately gives to the claimant's statements. *Id.* at 595–96; SSR 96-7p, at *5–6, 8.

In this case, the ALJ stated in his opinion that Andersen, through her statements in the record, alleged a disability due to severe and constant pain, coupled with mental disorders. The ALJ determined that Andersen's medically determined impairments—fibromyalgia, depression, mood disorder, anxiety, fatigue, and generalized pain—could reasonably be expected to cause

the symptoms she described. (R. at 17.) Anderson, therefore, met the first prong of the credibility test.

Nonetheless, the ALJ found that the claimant's statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible in so far as they were inconsistent with the RFC—to perform light work that is limited to entry-level, unskilled work with little decision making. (R. at 16–17.) Thus, he gave her testimony limited credibility.

Andersen offers two reasons why she believes the ALJ erred in finding her credibility diminished. Andersen attacks the ALJ's reliance on her "conservative" course of treatment. The ALJ stated that "[f]rom a physical standpoint, her fibromyalgia is treated with prescribed medications and physical therapy. She has not required any hospitalization or emergency room visits. Rather, her treatment has been conservative in nature, and diagnostic testing only revealed some AC joint arthritis in the right shoulder, but there was no evidence of pervasive osteoarthritis." (R. at 18.) In response, Anderson notes that the only treatments available for fibromyalgia are "conservative" and so the ALJ cannot use what he views as conservative treatment against her credibility. Andersen's objection rests on a misunderstanding of the ALJ's decision. The ALJ is discussing *all physical ailments*, not just fibromyalgia, and how she has received conservative treatment overall. This interpretation of the ALJ's decision is supported by the fact that the very next sentence in the opinion states, "[a]s *for her psychiatric conditions*, her treatment has also been conservative, in the form of prescription medications, and no need for hospitalizations." (R. at 18) (emphasis added). Thus, this Court finds substantial evidence in the record to support the ALJ's determination that the generally conservative nature of Andersen's medical care undermines the credibility of her reports on the frequency and severity of her symptoms.

Andersen also objects to the ALJ's finding that Andersen's ability to conduct "light household chores" undermines her credibility as to the frequency and severity of her symptoms and the extent of her functional limitations. (R. at 18); (Dk. No. 13). As mentioned above, the ALJ's credibility determinations are entitled to deference from this Court. Evidence in the record shows that Andersen cared for her eighteen month-old baby and seven pets, drove her four year-old to daycare, performed light household chores, prepared meals, and occasionally interacted with her son's daycare provider. This conduct provides substantial evidence to support the ALJ's doubts about Andersen's subjective reports that she could not do anything. (R. at 18.) Moreover, the record contains additional evidence that would further undermine her credibility—her continued part-time work and attempts to obtain full time employment. (*See* R. at 576–77, 597, 619–21.)

Additionally, the activities of daily living that Andersen admits to and that are discussed by the ALJ are vocationally relevant. Andersen's admitted activities of daily living are relevant for positions for an individual with a capacity to perform light, unskilled, entry-level work with limited decision making.

Overall, the ALJ's credibility determination is supported by substantial evidence in the record and the ALJ sufficiently supplied reasons for the weight he ultimately gave to the claimant's statements. The Court upholds his decision on credibility.

## C. *New Evidence Does Not Justify Remand*

Andersen asserts that this Court should remand the case to the ALJ to consider the report from Dr. Emiliani that Andersen submitted to the Appeals Council. (Dk. No. 13.) The Act provides that the Court can remand a case to the Commissioner for "additional evidence to be taken . . . upon a showing that there is new evidence which is material and that there is good

cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).[5] Applying this standard, the Fourth Circuit held in *Wilkins* that the Appeals Council is required to consider new and material evidence relating to the period on or before the date of the ALJ decision in determining whether to grant review. *Wilkins*, 953 F.2d at 95. If this Court finds that the additional evidence submitted to the Appeals Council was new and material, then the Court "reviews the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." *Id.* at 96.

The Fourth Circuit has defined new evidence as "evidence that is not duplicative or cumulative." *Id.* at 96. A court should find evidence to be "material if there is a reasonable possibility that the new evidence would have changed the outcome." *See Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir. 1985). This Court will not remand the case because it finds that Dr. Emiliani's submissions to the Appeals Council do not meet the standard required for remand by 42 U.S.C. §405(g) and *Wilkins*.

In her remand argument, Andersen relies exclusively on the documents from Dr. Emiliani as new evidence. Thus, this Court will only consider whether substantial evidence in the record supports the Appeals Council's decision that this report did not provide a basis for changing the ALJ's decision. This Court, therefore, must determine whether Dr. Emiliani's report is (1) new,

---

[5] This sentence is the sixth in §405(g) and so is often referred to by the Court as a "sentence six" remand. Andersen, in her Objections (Dk. No. 13), states that a sentence six remand is not the correct standard to apply. Contrary to Andersen's assertion, the Fourth Circuit has recently reaffirmed that "where new and material evidence is submitted to the Appeals Council . . . the proper disposition is to remand pursuant to sentence six of § 405(g) which authorizes a remand upon a showing of new material evidence." *Jackson v. Astrue*, 467 Fed. App'x. 214, 218 (4th Cir. 2012).

(2) material, and (3) relates to the period on or before the ALJ's decision—October 6, 2009.[6] (R. at 21.)

Dr. Emiliani's report does not meet the "materiality" requirement. A court should find evidence to be "material if there is a reasonable possibility that the new evidence would have changed" the ALJ's decision. *See Borders*, 777 F.2d at 956. For several reasons this Court finds Dr. Emiliani's report would not likely have led to a different result. First, nothing in the record suggests that Dr. Emiliani was Andersen's treating physician and so his opinion is not entitled to controlling weight. Second, the record does not contain medical records to lend credibility to Dr. Emiliani's assessment and entitle his opinion to more weight; rather, they are noticeably absent. Third, Dr. Emiliani's report of a severe mental impairment is contradicted by Andersen's statements that her bipolar disorder was fairly under control.[7] (R. at 552.) Thus, this Court does not find that the additional evidence submitted creates the reasonable possibility that the evidence would have changed the ALJ's decision.

This Court similarly does not find that Dr. Emiliani's report meets the definition of "new." "New evidence is evidence that is not duplicative or cumulative." *Wilkins*, 953 F.2d at 96. Dr. Emiliani's opinion is merely cumulative of both Ms. Neely's and Dr. Sumana Suresh's opinions as to Anderson's psychiatric conditions.[8] "If a losing party could vault the 'newness'

---

[6] The third requirement for remand requires that the additional evidence relate to the period on or before the ALJ's decision. Dr. Emiliani's information clearly satisfies this requirement, but because the evidence is not "material" or "new" a remand is not warranted under §405(g) and *Wilkins*.

[7] Andersen made this statement to Dr. Alan Pacinki. Dr. Pacinki is an internist who examined Andersen on August 22, 2008. In his notes, Dr. Pacinki indicated that Andersen was suffering from post-partum depression and that her bipolar disorder was fairly under control. He also noted soft tissue spasms in Andersen's neck, shoulders, wrists, hips, knees, and ankles. Dr. Pacinki diagnosed Andersen with chronic fatigue syndrome and fibromyalgia. (R. at 552–53.)

[8] Dr. Suresh was a treating psychiatrist whom Andersen saw every few months for medication management. Dr. Suresh diagnosed Andersen with attention deficit disorder in December 2008

hurdle of §405(g) merely by retaining an expert to reappraise the evidence and come up with a conclusion different from that reached by the hearing officer, then the criterion would be robbed of all meaning." *Fagg v. Chater*, No. 95-2097, 106 F.3d 390, *2 (4th Cir. 1997) (citing *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 140 (1st Cir. 1987)); *see also Wooding v. Comm'r of Soc. Sec.*, No. 4:10-CV-6, 2010 WL 4261268, at *6 (W.D. Va. Oct. 29, 2010). Andersen has tried to do just that.

In conclusion, the addition of Dr. Emiliani's statements to the record does not justify a remand.

## CONCLUSION

Having reviewed the R&R and the Appeals Council's decisions, this Court finds that the Commissioner's findings were supported by substantial evidence and the Commissioner applied the correct legal standard when denying Andersen's request for benefits. Thus, this Court ADOPTS the R&R of the Magistrate Judge and OVERRULES Andersen's objections. Accordingly, Andersen's motion for summary judgment and motion to remand will be DENIED and the Commissioner's motion for summary judgment will be GRANTED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

/s/

John A. Gibney, Jr.
United States District Judge

Date: September 27, 2012
Richmond, VA

---

and wrote a letter in August 2009 that her current diagnosis at the time was mood disorder. (R. at 625.)